IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| WILLIAM K. MAHOE, | ) | CIV. NO. 13-00186 HG-BMK |
|---|---|---|
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION TO DENY DEFENDANT OPERATING ENGINEERS LOCAL UNION NO. 3'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| vs. | ) ) ) | |
| OPERATING ENGINEERS LOCAL UNION NO. 3 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO, ET AL., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**FINDINGS AND RECOMMENDATION TO DENY
DEFENDANT OPERATING ENGINEERS LOCAL UNION NO. 3'S
MOTION FOR ATTORNEYS' FEES AND COSTS**

Before the Court is Defendant/Counter-Claimant Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO's ("Defendant") Motion for Attorneys' Fees and Costs, filed March 12, 2015. (Doc. 85.) Defendant seeks fees it incurred in defending what it claims were frivolous or unfounded claims, (Doc. 86 at 5), and requests an award of attorneys' fees in the amount of $80,730 and costs in the amount of $5,596, for a total award of $86,326.00. (Doc. 86 at 25.) The Court finds this matter suitable for disposition without a hearing pursuant to Local Rule LR 7.2(d) of the Local Rules of Practice for

the United States District Court for the District of Hawaii. After careful consideration of the Motion, the supporting and opposing memoranda, declarations, and exhibits attached thereto, and the record established in this action, the Court finds that an award of attorneys' fees to Defendant is not warranted in this case. Therefore, the Court recommends that the Defendant's Motion for Attorneys' Fees and Costs be DENIED.

## **BACKGROUND**

The parties and the Court are familiar with the factual and procedural background of this case; therefore, the Court will only address herein the background that is relevant to the instant Motion. The following facts are taken from the Court's November 25, 2014 Order granting Defendant's Motion for Summary Judgment. (See Doc. 76.)

Plaintiff William K. Mahoe ("Mahoe") began his employment with Defendant Operating Engineers Local Union 3 of the International Union of Operating Engineers, AFL-CIO in 1993. (Doc. 76 at 5.) In February 2010, Mahoe served as Treasurer on Defendant's Executive Board and worked at the District 17 offices in Hawaii in the position of Special Representative to the Business Manager. (Id. at 6.) Mahoe was responsible for special projects, general oversight of the District 17 offices, and the implementation of Defendant's policies in the District.

(Id.) Beginning in March 2010, Defendant began investigating Mahoe because of allegations made by two former employees that Mahoe had misused Union funds. (Id.) Two months later, on May 26, 2010, Defendant placed Mahoe on unpaid administrative leave pending the results of the investigation. (Id.)

According to Mahoe, on July 26, 2010, he received a call from another employee who told him that an executive from the mainland, Guy Prescott ("Prescott"), was sent to Defendant's District 17 offices to terminate an employee. (Id. at 7.) While still on unpaid administrative leave, Mahoe went to Defendant's District 17 offices, got into a confrontation with Prescott, and directed Defendant's employees in District 17 to walk off of their jobs. (Id.) The following day, Mahoe was terminated by Defendant's Business Manager for gross insubordination. (Id. at 8.)

On August, 6, 2010, ten days after Mahoe was terminated, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id.) Mahoe claims that on August 20, 2010, he amended the Charge of Discrimination to allege claims of race discrimination and retaliation. (Id.)

Following Mahoe's termination, Defendant continued its investigation into Mahoe, and ultimately concluded that the majority of the allegations against Mahoe were unsubstantiated, and therefore, Defendant decided to reinstate Mahoe.

(Id. at 8.) On October 24, 2010, Defendant signed a Letter of Understanding as to the terms of the reinstatement, under which Mahoe was required to, inter alia, dismiss all complaints and administrative charges he had filed against Defendant. (Id. at 8-9.) Despite the terms of the Letter of Understanding, Defendant maintains that Mahoe did not withdraw his August 2010 EEOC Charge of Discrimination. (Id. at 9.)

On November 1, 2010, Mahoe returned to work for Defendant in his position as Special Representative to the Business Manager. (Id. at 10.) On November 2, 2010, Defendant's Office Manager sent an email to Mahoe instructing him not to rent the Union's hall facility without the approval of the legal department, due to insurance concerns. (Id.) Nevertheless, on December 11, 2010, Mahoe attended a wedding reception for his cousin at the Union's facilities on Oahu. (Id.) Six weeks after the wedding, on January 23, 2011, Defendant's Executive Board held a meeting at which it was decided that "Mahoe had to go." (Id. at 10-11.) After the meeting, Defendant's Business Manager asked for Mahoe's resignation for attending the wedding and failing to properly manage the use of Defendant's facilities. (Id. at 11.) On February 2, 2011, Mahoe delivered a signed resignation letter to Defendant's Business Manager. (Id.)

On July 21, 2011, Mahoe filed a Charge of Discrimination with the

Hawaii Civil Rights Commission, based on Defendant's request for his resignation in January 2011.  (Id. at 12)   On June 25, 2012, the EEOC issued Mahoe a Right to Sue Letter.  (Id.)   Mahoe claims that his constructive discharge in January 2011 was in retaliation for the EEOC Charge of Discrimination he filed against Defendant in August 2010 and did not withdraw following his reinstatement in November 2010.  (Id.)

On September 21, 2012, Mahoe filed a complaint, in the Circuit Court of the First Circuit, State of Hawaii ("state court"), against Defendant pleading the following causes of action:   (1) disparate treatment arising from racial discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and (2) Defamation, due to Defendant's defamatory statements regarding Mahoe's lack of integrity and competence to perform his duties as Treasurer of the Union.   (Doc. 1-1.)   On April 19, 2013, Defendant removed the state court action to this Court.   (Doc. 1.)

On April 26, 2013, Defendant filed a Motion to Dismiss.   (Doc. 7.) On August 9, 2013, Defendant filed its answer, denying the allegations in Mahoe's Complaint, raising various affirmative defenses, and alleging a Counterclaim against Mahoe for (1) Breach of Contract under the Labor Management Relations Act ("LMRA") § 301 and under Hawaii Common Law; (2) Breach of Fiduciary

Duty under the LMRA and under Hawaii Common Law; (3) Fraud and Concealment of Material Facts, in violation of Hawaii Common Law; (4) Conversion of Funds and Assets; and (5) Unjust Enrichment, in violation of Hawaii Common Law. (See generally, Doc. 27.) Mahoe filed an answer to Defendant's counterclaim on August 30, 2013, denying all of allegations made against him and raising various affirmative defenses. (See generally, Doc. 29.)

On September 27, 2013, the Court issued its Order Granting Defendant's Motion to Dismiss, with leave to amend. (Doc. 34.) Judge Helen Gillmor held that with respect to his claim of disparate treatment, Mahoe established the first two necessary elements by stating that he belongs to a protected class and that he completed his job duties satisfactorily, however, Judge Gillmor determined that Mahoe was "not as clear" in his pleading of the last two elements of a disparate treatment claim, that is, that Mahoe suffered an adverse employment action and that similarly situated employees outside of his protected class were treated more favorably. (Doc. 34 at 10-11.) The Court further held that the Complaint "does not contain sufficient factual allegations in connection with constructive discharge to state a retaliation claim," and therefore, granted Defendant's Motion to Dismiss, as to the retaliation claim, with leave to amend. (Doc. 34 at 17.) With regard to Count I, Mahoe's disparate treatment claim, the Court determined that Mahoe failed

to state a claim for which relief could be granted, and therefore dismissed Count I with leave to amend. (Id.) With regard to Count II, Mahoe's defamation claim, the Court held that apart from the element of negligence or actual malice, Mahoe failed to allege sufficient facts with respect to the remaining elements of a defamation claim. (Doc. 34 at 18-20.) Accordingly, the Court dismissed Count II with leave to amend, finding that Mahoe failed to state a claim for which relief could be granted. (Doc. 34 at 20.)

On November 5, 2013, Mahoe filed an Amended Complaint ("First Amended Complaint" or "FAC"). (Doc. 36.) On November 22, 2013, Defendant filed a Motion to Dismiss Mahoe's First Amended Complaint, arguing, in relevant part, that Mahoe's FAC fails to address the defects noted by the Court in its September 27, 2013 Order, and therefore, the FAC should be dismissed for failure to state a claim. (Doc. 38-1.) An oral discussion on Defendant's Motion was held on February 10, 2014. (Doc. 50.) The Court denied in part and granted in part Defendant's second Motion to Dismiss, with leave to amend. (Id.) The Court held that Mahoe sufficiently stated a claim for disparate treatment based on the allegations that Defendant decreased his income but not the income of a similarly situated Caucasian employee, and accordingly denied Defendant's Motion to Dismiss with respect to Mahoe's disparate treatment claim based on reduced

income.  (Id. at 1.)  The Court, however, dismissed Mahoe's disparate treatment claim based on investigations and administrative leave, as well as his disparate treatment claim based on forced resignation, each with leave to amend.  (Id. at 2-3.)  The Court further held that Mahoe failed to state a retaliation claim because he failed to allege sufficient facts to link his complaint and the alleged retaliatory acts of Defendant, and Mahoe also failed to state that Defendant was motivated by its desire to retaliate against him.  (Id. at 3.)  Accordingly, the Court dismissed Mahoe's retaliation claim with leave to amend.  (Id. at 4.)

On March 3, 2014, Mahoe filed his Second Amended Complaint ("SAC"), containing two counts:  Count I for racial discrimination, and Count II for retaliation.  (Doc. 51.)  On August 28, 2014, Defendant filed a Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment.  (Doc. 62.)  Mahoe filed his Opposition on September 13, 2014, and in relevant part, Mahoe summarily abandoned his Count I racial discrimination claim, conceding that "the evidence in this case does not support his Discrimination claim under Count I of the SAC."  (Doc. 67 at 3-4.)

On November 25, 2014, the Court issued its Order Granting Defendant's Motion for Summary Judgment.  (Doc. 76.)  With regard to Mahoe's Count I for racial discrimination, the Court noted that Mahoe agreed that summary

judgment in favor of Defendant was appropriate, and therefore, the Court granted summary judgment in favor of Defendant on this count. (Doc. 76 at 15-16.) With regard to Mahoe's Count II for retaliation, the Court found that Mahoe established a prima facie case of retaliation, (Doc. 76 at 18-24); however, Mahoe was unable to establish that Defendant's proffered legitimate, non-retaliatory reason for asking Mahoe to resign in January 2011, was pretext for retaliation. (Doc. 76 at 30.) Accordingly, the Court granted Defendant's motion for summary judgment as to Mahoe's Count II retaliation claim. (Doc. 76 at 30.)

On February 23, 2015, the Court approved the parties' Stipulation to Voluntarily Dismiss Defendant's counterclaims without prejudice. (Doc. 83.) Under the Stipulation, the parties agreed that each party would bear its own costs and attorneys' fees incurred in connection with the Counterclaim, but reserved Defendant's right to file a motion for attorneys' fees and costs incurred in defending against Mahoe's claims, which were dismissed by the Court's November 25, 2014 Order granting Defendant's Motion for Summary Judgment. (Doc. 83 at 2-3.) On February 26, 2015, Judgment in favor of Defendant was filed. (Doc. 84.)

On March 12, 2015, Defendant filed its Motion for Attorneys' Fees and Costs, currently pending before this Court, requesting an award of $86,326 in attorneys' fees and costs. (Doc. 85 at 2.)

## **DISCUSSION**

In its Motion for Attorney's Fees and Costs, Defendant contends that it seeks only those fees incurred "in defending frivolous or unfounded claims[,]" and thus it "is limiting its motion to those claims which Plaintiff abandoned," i.e., Plaintiff's disparate treatment claim. (Doc. 86 at 5.) As a basis for its requested fees and costs, Defendant estimates the amount of hours reasonably allocable to the defense of Plaintiff's disparate treatment claims. (See Doc. 86 at 23.) Specifically, Defendants argue that 70% of Mahoe's deposition and 55% of the moving papers were devoted to the disparate treatment claims, and therefore, Defendants request 60% of the attorneys' fees incurred in defending this action. (Id.)

Title VII provides that in "any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs[.]" 42 U.S.C. § 2000e-5(k). "Before awarding attorneys' fees, the Court must determine whether [the movant] represents a 'prevailing party.'" Feher v. Dep't of Labor & Indus. Relations, 561 F. Supp. 757, 762 (D. Haw. 1983). A prevailing party is "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded[.]" Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res., 532

U.S. 598, 603 (2001) (citing Black's Law Dictionary 1145 (7th ed. 1999)) (brackets omitted). In other words, a "prevailing party" is one who has been awarded some relief by the court. Buckhannon, 532 U.S. at 603.

Under Title VII, "[a]ttorneys' fees should only be awarded a defendant in exceptional circumstances." Bane v. Sailors' Union of the Pac., Civ. No. 05-00577 JMS-BMK, 2008 WL 2598155 at *1 (July 1, 2008) (quoting Saman v. Robbins, 173 F.3d 1150, 1157 (9th Cir. 1999)) (internal quotation marks, brackets, and ellipsis omitted). The United States Supreme Court has held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 421 (1978); see also Bane, 2008 WL 2598155, at *1 ("A plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."). This Court has previously noted that other jurisdictions have found an award of attorneys' fees to a prevailing Title VII defendant appropriate "where the plaintiff failed to establish a prima facie case of discrimination[.]" Bane, 2008 WL 2598155, at *3 (citation omitted).

In determining whether a plaintiff's action is frivolous, unreasonable, or without foundation, the Christiansburg Court stressed the importance that a district court not "engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation," and noted instead that "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." Christiansburg Garment Co., 434 U.S. at 421-22. The Ninth Circuit Court has further explained that "[g]uaranteeing individuals an opportunity to be heard in court instead of leaving them only with self-help as the means of remedying perceived injustices creates respect for law and ameliorates the injury that individuals feel when they believe that they have been wronged because society views them as inferior." Harris v. Maricopa Cnty. Superior Court, 631 F.3d 963, 971 (9th Cir. 2011) (internal quotation marks, ellipsis, and citation omitted). Accordingly, the Ninth Circuit Court has recognized that our system of awarding attorneys' fees in civil rights cases is in large part dedicated "to encouraging individuals injured by discrimination to seek judicial relief." Id. Thus, "Congress intended to protect defendants from litigation having *no* legal or factual basis," Mitchell v. Office of Los Angeles Cnty. Superintendent of Schools, 805 F.2d 844, 847 (9th Cir. 1986) (internal quotation marks and citation omitted; emphasis in

original), and accordingly, courts are permitted to award attorneys' fees to prevailing defendants only for "exceptionally unwarranted claims," and such an award is limited only to the amount of attorneys' fees attributable exclusively to a plaintiff's frivolous claims. Harris, 631 F.3d at 971, 973 (internal quotation marks and brackets omitted).

Here, Defendant argues that all of Plaintiff's disparate treatment and retaliation claims predating the October 23, 2010 Letter of Understanding "utterly lacked foundation at the time of filing." (Doc. 86 at 17-22.) In the Court's view however, whether Mahoe's disparate treatment claims were frivolous and unfounded is a much closer question than Defendant admits. As Defendant notes, (see Doc. 86 at 5), the standard for imposing attorneys' fees and costs on a Title VII plaintiff is a very high one and is only done in exceptional cases. Harris, 631 F.3d at 971. Here, on February 10, 2014, the Court held an oral discussion on Defendant's Second Motion to Dismiss, and in relevant part, the Court held that "Mahoe has sufficiently stated a claim for disparate treatment based on the allegations that the Defendant Union decreased his income but not the income of a similarly situated Caucasian employee." (Doc. 50 at 1.) Accordingly, the Court denied Defendant's Second Motion to Dismiss, in part, with respect to Mahoe's disparate treatment claim based on reduced income. (Id.) Thus, inasmuch as

13

Plaintiff was able to make a prima facie case for disparate treatment based on reduced income, the Court finds that Mahoe's disparate treatment claim was brought with an arguable basis in law or fact. Only in exceptional cases did Congress intend that defendants be awarded attorneys' fees under Title VII, see Mitchell, 805 F.2d at 848, and this is clearly not the type of case that justifies the award of attorneys' fees to Defendant. Cf. Wood v. McEwen, 644 F.2d 797, 802 (9th Cir. 1981), cert. denied, 455 U.S. 942 (1982) (awarding fees against pro se litigant who filed over 36 cases repeatedly raising the same claims, which had become burdensome and costly to the litigants, and asserting frivolous grounds of error on appeal).

Moreover, the Court refuses to infer Plaintiff's voluntary abandonment of its disparate treatment claim as evidence that Plaintiff's claims were in fact patently frivolous and unfounded, as Defendants appear to argue. (See Doc. 86 at 21.) Defendants cite no authority for the proposition that a plaintiff's voluntarily abandonment or dismissal of its claims is grounds for an award of attorneys' fees, and the Court finds none. Instead, it cannot be said that Plaintiff's claims were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so[,]" and therefore, Defendant failed to establish that this case presents "exceptional circumstances" under which it should be awarded attorneys' fees. See Bane, Civ. No. 05-00577 JMS-BMK, 2008 WL 2598155, at

14

*1.  It would certainly not serve "the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII," Christiansburg, 434 U.S. at 422, to uphold an award of $86,326 in fees and costs against a plaintiff like Mahoe.  Such an award after a case that did not even proceed to trial would bode ill for plaintiffs pursuing more complex claims requiring more time in court for the presentation of their evidence and rebuttal of defendants' claims.  The chilling effect upon civil rights plaintiffs would be disproportionate to any protection defendants might receive against the prosecution of meritless claims.  Accordingly, this Court finds that this case does not present "exceptional circumstances" under which attorneys' fees should be awarded to Defendant.

\\

\\

\\

\\

\\

\\

\\

\\

\\

# CONCLUSION

Based on the foregoing, the Court finds and recommends that Defendant's Motion for Attorneys' Fees and Costs be DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 23, 2015.



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Mahoe v. Operating Engineers Local Union No. 3 of the International Union of Operating Engineer, AFL-CIO, et al., Civ. No. 13-00186 HG-BMK, FINDINGS AND RECOMMENDATION TO DENY DEFENDANT OPERATING ENGINEERS LOCAL UNION NO. 3'S MOTION FOR ATTORNEYS' FEES AND COSTS.